**NATIONAL SECURITY ARCHIVE, Appellant,**

v.

**ARCHIVIST OF THE UNITED STATES.**

No. 88–5218.

United States Court of Appeals, District of Columbia Circuit.

Argued May 22, 1989.
Decided July 31, 1990.

Patti A. Goldman, with whom Alan B. Morrison and William B. Schultz, Washington, D.C., were on the brief, for appellant.

David L. Sobel, Washington, D.C., also entered an appearance, for appellant.

Freddi Lipstein, Atty., Dept. of Justice, with whom John R. Bolton, Asst. U.S. Atty., Jay B. Stephens, U.S. Atty., and Leonard Schaitman, Atty. Dept. of Justice, Washington, D.C., were on the brief, for appellee.

Before D.H. GINSBURG and SENTELLE, Circuit Judges, and ROBINSON, Senior Circuit Judge.

Opinion for the Court filed PER CURIAM.

PER CURIAM:

The National Security Archive (NSA) seeks access to documents relating to the investigation, by the President's Special Review Board (Tower Commission), of the involvement of the National Security Council staff in the sale of weapons to the Government of Iran and the diversion of profits therefrom to support the Contra insurgency in Nicaragua. The NSA submitted document requests, pursuant to the Freedom of Information Act (FOIA),[1] to the Office of Administration of the Executive Office of the President, and to the White House Counsel,[2] both of which denied the requests. The NSA then sued those two entities in the district court,

1. 5 U.S.C. § 552 (1988).

2. The Archivist of the United States has been substituted for the defendants below for the purposes of this appeal.

which granted the defendants' motion for summary judgment and denied the NSA's cross-motion for summary judgment. The court held that neither the FOIA nor the Federal Advisory Committee Act (FACA),[3] requires the defendants to produce the requested documents.[4] Finding no error, we affirm.

## I. BACKGROUND

The President established the Tower Commission "in accordance with" the FACA on December 1, 1986, and charged it with reviewing the involvement of the NSC staff in the Iran–Contra affair.[5] He also directed the Office of Administration, whose mandate is to "provide components of the Executive Office of the President with such administrative services as the President shall from time to time direct,"[6] to furnish the Commission "with such administrative services, funds, facilities, staff, and other support services as may be necessary for the performance of its functions."[7] The Executive Order establishing the Commission further provided that the Commission would go out of existence 30 days after submitting its report to the President.[8]

In four separate letters addressed to the Office of Administration, each dated March 13, 1987, appellant requested, "[p]ursuant to the Freedom of Information Act," a variety of documents relating to the Tower Commission's probe.[9] By four nearly identical letters dated March 17, 1987, the Office of Administration denied appellant's requests, stating that the Office did not "maintain" any of the requested documents.[10] Thereupon, in a letter dated March 30, 1987, appellant redirected its requests to the Counsel to the President, stating that it was "requesting these records under the Freedom of Information Act and pursuant to President Reagan's undoubted discretionary authority to direct their release."[11] On April 28, 1987, the Counsel denied appellant's request, stating that "the White House Office, as an entity whose 'sole function is to advise and assist the President,' is not an 'agency' subject to the Freedom of Information Act," and that it would not "be appropriate to make discretionary release of these documents at this time."[12]

Appellant then filed suit in the district court seeking, under the FOIA and the FACA, to compel the Office of Administration and the White House Counsel to disclose the requested records. In granting the motion for summary judgment filed by the Executive Office of the President and the Counsel to the President, the district court found that:

> The Commission submitted its report to the President on February 26, 1987 and terminated its activities thirty days later, on March 28, 1987. Following the termination; and the "notes taken by Dr. Alton Keel (acting deputy at the National Security Council) of [a] November 10, 1986 meeting." Letters to Nell Doering, Chief, Records & Pubs. Mgt. Branch, Exec. Office of the President (March 13, 1987) from appellant, J.App. 11–29. Appellant asserts that although some of these documents have since been released, it still seeks supporting documentation and the unreleased materials. Brief for Appellant at 10.

**3.** 5 U.S.C.A. app. 2 (Supp.1990).

**4.** *National Sec. Archive v. Executive Office of the President,* 688 F.Supp. 29 (D.D.C.1988), J.App. 51.

**5.** Exec.Order No. 12575, 51 Fed.Reg. 43,718 (1986).

**6.** Reorganization Plan No. 1 of 1977, 5 U.S.C.A. app. 1, § 2 (Supp.1990).

**7.** 51 Fed.Reg. at 43,718.

**8.** *Id.* at 43,719.

**9.** Appellant sought "all materials, documents, notes, memoranda, cables, and records used in the preparation of the fourteen [listed] case studies prepared for the [Tower Commission]"; the "complete texts of th[ose] fourteen case studies"; the "complete transcripts of [certain] interviews conducted by" the Tower Commis-

**10.** Letters to Glenn Baker, National Security Archive (March 17, 1987) from Nell Doering, Freedom of Information Officer, J.App. 31–34.

**11.** Letter to Arthur B. Culvahouse, Counsel to the President (March 30, 1987) from Quinlan Shea, Jr., National Security Archive, J.App. 35.

**12.** Letter to Quinlan Shea, Jr., National Security Archive (April 28, 1987) from Arthur B. Culvahouse, Jr., Counsel to the President, J.App. 36.

nation of the Commission's activities, its files were transferred to the Office of the Counsel to the President.[13]

The district court also found that the Tower Commission "did not avail itself of the records management capabilities of the Office of Administration made available to it" and that the Office did not "exercise any direction or control over the files and records compiled by the Commission."[14] Accordingly, recognizing that a litigant seeking release of government documents under the FOIA must show that the agency had "custody [or] control"[15] of the documents sought at the time the request was made, the court concluded that the Office of Administration had no obligation to search for or release the documents requested in the March 13 letters.[16] The court also rejected appellant's "vague contention that the Office of Administration had a duty to forward the misdirected request to the Tower Commission."[17] Finally, the court concluded that the April 28 request directed to the Counsel to the President was without effect; as a part of the Office of the President, the Counsel is not considered an "agency" under the FOIA, and is therefore not subject to the disclosure requirements of that Act.[18]

Rather than focusing upon the FOIA, appellant now asks us to look beyond the requirements of that statute by recognizing an additional obligation arising from the FACA, which allegedly required the Office of Administration and the Counsel to the President to redirect the FOIA requests to the appropriate authority. According to appellant, "[u]nder the FACA, the entity (an agency or the President) that establishes or utilizes an advisory committee has an obligation to ensure that the committee complies with the FACA."[19] Appellant thus reasons that because the President in this case delegated his responsibilities to the director of the Office of Administration,[20] that office was obligated to guide misdirected requests for documents relating to the activities of the Tower Commission.[21] Similarly, appellant urges that the Counsel to the President was obligated to respond to its request on the ground that, "[s]ince the President is responsible for ensuring that presidential advisory committees like the Tower Commission comply with the FACA, his counsel is not insulated from the FACA's dictates."[22]

## II. ANALYSIS

We discuss first whether the FOIA required the Office of Administration or the Counsel to the President to comply with the document requests; we then turn to consideration of whether the FACA imposed upon the defendants such an obligation.

### A. The Freedom of Information Act

■ As appellant may now recognize, we cannot disturb the district court's ruling if we look solely to the FOIA. In order to succeed in a FOIA action, a party must show "that an agency has (1) 'improperly'; (2) 'withheld'; (3) 'agency records.'"[23]

---

13. *National Sec. Archive v. Executive Office of the President, supra* note 4, at 1–2, J.App. 51–52.

14. *Id.* at 5–6, J.App. 55–56.

15. *Kissinger v. Reporters Comm. for Freedom of the Press,* 445 U.S. 136, 151, 100 S.Ct. 960, 968–69, 63 L.Ed.2d 267 (1980).

16. *National Sec. Archive v. Executive Office of the President, supra* note 4, at 4–8, J.App. 54–58.

17. *Id.* at 5 n. 3, J.App. 55 n. 3.

18. *Id.* at 3 & n. 2, J.App. 53 & n. 2.

19. Brief for Appellant at 16.

20. Section 6 of the Commission's Charter provides that

> the functions of the President under the Federal Advisory Committee Act, as amended, except that of reporting to the Congress, which are applicable to the Board, shall be performed by the Director of the Office of Administration, Executive Office of the President.

Charter, President's Special Review Board, J.App. 50.

21. Brief for Appellant at 16.

22. *Id.* at 19.

23. *Kissinger v. Reporters Comm.,* 445 U.S. at 150, 100 S.Ct. at 968; *accord Bureau of Nat'l*

Moreover, the agency must have "possession or control" over a document before it may be deemed to be "withholding" it.[24] Inasmuch as appellant has not attempted to overcome the district court's finding that the Tower Commission had sole possession and control of the requested documents until the date of the Commission's expiration, at which point they were transferred to the Counsel to the President, we perceive no basis for upsetting its conclusion that the Office of Administration did not withhold the documents.

■ The subsequent request directed to the Counsel was equally without effect. The Supreme Court has made clear that the Office of the President is not an "agency" for purposes of the FOIA,[25] and appellant does not contend that the Counsel to the President, which is part of that office, is an exception to that principle. Inescapably then, the FOIA does not, at least by itself, require the Counsel to turn over the requested documents.

## B. The Federal Advisory Committee Act

■ We also conclude that the FACA imposes no special "traffic-cop" responsibilities upon the President or his delegates that would permit us to ignore established rules governing disclosure of government documents. Section 10(b) of the FACA states:

> Subject to section 552 of title 5, United States Code [the FOIA], the records, reports, transcripts, minutes, appendixes, working papers, drafts, studies, agenda, or other documents which were made available to or prepared for or by each advisory committee shall be available for public inspection and copying at a single location in the offices of the advisory committee or the agency to which the advisory committee reports until the advisory committee ceases to exist.[26]

Accordingly, Section 10(b) renders the disclosure provisions of the FOIA applicable to advisory committees and designates each committee as the appropriate repository for its own records. It does not, by any word or implication, impose upon the President or upon the Office of Administration a special responsibility to guide document requests. Nor does appellant point to anything in the legislative history of the FACA that suggests that Congress intended to create such an obligation.

It is true that the President is given certain specific responsibilities elsewhere in the FACA. Section 6 requires him to submit to Congress a report on "his proposals for action or his reasons for inaction, with respect to the recommendations" of an advisory committee, and an annual report "on the activities, status, and changes in the composition of advisory committees in existence during the preceding fiscal year."[27] In addition, section 10 makes the President generally responsible for deciding whether an advisory committee meeting will be open to public attendance and participation.[28] In contrast, no provision of the FACA could be read as burdening the President with the responsibility described by appellant.

Even if, as appellant argues, the FACA requires the President "to ensure that the advisory committee complies with the FACA,"[29] he would presumably do so by directing the committee to comply with a properly submitted document request. Since appellant did not, in this instance, submit its requests to the proper entity, the President cannot have failed in whatever responsibility he may have to enforce the requirements of the FACA.

We are also unpersuaded by appellant's reliance upon *Founding Church of Scientology, Inc. v. NSA*[30] for the proposition

---

*Affairs v. United States Dep't of Justice,* 742 F.2d 1484, 1488 (D.C.Cir.1984).

**24.** *Kissinger v. Reporters Comm.,* 445 U.S. at 150–55, 100 S.Ct. at 968–71.

**25.** *Id.* at 156, 100 S.Ct. at 971.

**26.** 5 U.S.C.A. app. 2, § 10(b) (Supp.1990).

**27.** *Id.* § 6(b), (c).

**28.** *Id.* § 10(a)(2), (d).

**29.** Brief for Appellant at 13.

**30.** 610 F.2d 824, 837 (D.C.Cir.1979).

that the FACA requires the Office of Administration "to make reasonable efforts" to satisfy document requests by forwarding them to the appropriate entity. In that case, we held that when an agency receives a document request under the FOIA, it must make a reasonable effort to identify and retrieve the requested material from its files. Nothing in our opinion can be read to require an entity that does not have "possession or control" of requested documents to forward a request to the appropriate entity.

Finally, appellant contends that the Office of Administration circumvented the FACA by engaging in a "shell game"[31] with the documents sought, first by failing to direct its request to the custodian of the pertinent records, and then by transferring the records to the Counsel to the President when the Tower Commission terminated its activities.[32] The Supreme Court, in *Kissinger v. Reporters Committee*, raised but did not decide whether the "possession or control" requirement "might be displaced in the event that it was shown that an agency official purposefully routed a document out of agency possession in order to circumvent a FOIA request."[33] The district court found it unnecessary to address this issue, having found that appellant never submitted a proper request for the documents sought.[34] Because we agree that appellant never directed any request to the appropriate entity, the Tower Commission, we need not consider whether the Government improperly transferred documents with the intent of evading a proper request or what the consequences of such a transfer would be.

### III. CONCLUSION

For the foregoing reasons, we conclude that the district court properly granted the motion for summary judgment filed by the Counsel to the President and the Executive Office of the President. The judgment is therefore

*Affirmed.*

31. Brief for Appellant at 1.

32. *Id.* at 19.

33. 445 U.S. at 155 n. 9, 100 S.Ct. at 971 n. 9.

34. *National Sec. Archive v. Executive Office of the President, supra* note 4, at 9, J.App. at 59.